The opinion of the Court was delivered by
WxtheRs, J.
When this case was before this Court, upon a former occasion, (vide 5 Rich. 251,) the question now presented was not adjudged; nor was the evidence upon which it arises before the jury, 'on‘the first trial. It was said, in the opinion pronounced, as follows: “ This instruction dispensed with the inquiry whether the defendant had waived the tender of a title-deed and discharged the plaintiffs from making it; and so, that issue, with the evidence pertinent to it, was not submitted to the jury.” Upon this inquiry, however, the case turned, on the recent trial (indeed, to test this very question it was remanded,) and a non- *197 suit was ordered, because, it was ruled, as matter of law, that what the defendant had said and done could not be construed into a waiver or discharge of the performance of that condition,to which the judgment of this Court, in the former appeal, held the parties (plaintiffs) obligated.
We must first resort to a condensed abstract of the facts which raise our present question.
The correspondence leading to the agreement to purchase the steam saw mill by defendant, was opened, on his part, the 14th February, 1849, with Dubignon, as owner, “ with other gentlemen,” “ of a steam saw mill in Brunswick” (Georgia). Loud, therefore, treated, from the' first, and throughout, with Dubig-non, for the purchase of the property, and had no right to discard anything he did, or offered to do, towards the consummation of the transaction, upon the footing that there were other joint owners or cotenants.
Of course, it is not meant to be intimated that Loud was bound to accept an insufficient conveyance of title, or that he ma.y not avail himself of proof on that subject, from whomsoever it may be proper it should come. We stop not to discuss or inquire whether the plaintiffs must show, on ' trial, a good title, or a perfect title, in law alone, or in law and equity (vide Law vs. House, 2 Hill, 268), or whether evidence on that point must come from the defence (vide Breithaupt vs. Thurmond, 3 Rich. 220); or whether that question will enter into the case at all. What is now said, is intended to refer to the fact reported, that Ingraham assumed to speak in the name of Dubig-non, alone, when he announced, that the latter was ready at any moment to make titles. So far as that fact enters into the question at all, it should not be judicially resolved to mean, that a conveyance by Dubignon, alone, was intended by him, or by Ingraham, while others had also an estate in the subject matter ; or that Loud was so impressed; and especially so, since it does not appear that he took any such ground of objection.
The agreement was consummated, as appears by the letter of Loud, of date March 16, 1849, in which he refers to a time *198 (not fixed with specific exactness as to the day) when he expected — “ calculated,” he says — to visit the vendor, unless one of his sons should do so earlier; and adds, “ upon my arrival in Brunswick, we will consummate the sale by payment and conveyance, &c.” Part of the purchase money was to be paid in cash, the remainder to be secured by notes. By letter of 29th March, Loud informed Dubignon that his son had proceeded to the St. John’s by the last preceding boat, and that on the next morning (March 30) he would send the money to his son, with a view to his calling on Dubignon, in about a week after receipt of the letter, and added, “ If able, I shall leave, on Monday, for the St. John’s, and return with him to your place.” In the letter of the 12th May. 1849, Loud advised Dubignon that on account of an unexpected weight of expense for repairs, he felt “compelled to decline the consummation of the purchase,” and if the reasons did not appear to excuse him, he would be willing to pay a reasonable amount in consequence.
Such are the facts that make the case at present. No doubt has been expressed that if a deed of conveyance not liable to just objection, had been tendered, here in Charleston, the right of the plaintiffs to go to the jury would have become unquestionable. Our point is, Did that omission, under the circumstances, exclude the plaintiffs, by intendment of law, from going before the jury, upon the rule that in case of mutual, dependent, concurrent conditions, a willingness and readiness to perform, and a prevention thereof by the defendant’s wrong, shall work a dispensation, and be equivalent to the performance of a condition precedent?
A vendor cannot maintain an action for the purchase-money, nor (as we have determined in this case) for damages, when his part of the agreement, unexecuted, is precedent, or concurrent, without an actual performance, on his part, or tender and refusal — without executing and offering a conveyance, where that is his duty, unless the purchaser has discharged him from so doing. Sugden on Vendors, 261; Jones vs. Barkley, Doug. 684 ; Philips vs. Fielding, 2 H. Black. 123; and a vast many cases might be cited in addition.
*199 The difficult question is, What shall be held to work a discharge, or release from the performance of a covenant? It would be dangerous — it would not be practicable — to lay down a rule which should have the virtue of a legal measure or standard. Much technical difficulty was thrown around cases which involved mutual and independent covenants, and strictness exacted of tender by the party who demanded performance by the other. It has been often remembered that a covenant under seal could not be released or discharged by parol, and hence some act in pais was required. This proposition was introduced in the case of Law vs. House, 3 Hill, 268. But Lord Mansfield broke ground, in Jones vs. Barkley, towards the object of placing the issue upon the truth and common sense of the case, of guiding the inquiry of the Court and the jury by principles which accord with the real intention of the parties, and a just interpretation of their acts. He said, “ The party must show he was ready; but if the other stops him on the ground of an intention not to perform his part, it is not necessary for the first to go further, and do a nugatory act.” This has been followed by cases of the like import in England and America: vide Rawson vs. Johnson, 1 East, 203; Kemble vs. Mills, 39 Eng. C. L. R. 640; Pinkus vs. Hamaker, 11 Serg. and R. 200 ; Hampton vs. Speckenagle, 9 Serg. & 11. 212; and various cases in Meeson & Welsby?s Reports show, that it is held sufficient, upon demurrer, to allege a readiness and willingness to perform, but that the defendant refused to perform his part, and that readiness and willingness imported ability to do it. [Hoc est paratus verificare.) De Medina vs. Norman, 9 Mees. & W. 820 ; Poole vs. Hill, 6 ib. 835, and cases there cited in note by American Editor.
In Jones vs. Barkley it was held nugatory to execute the assignment and release in question, for the other party had absolutely refused to comply with his undertaking. Surely it may be as vain and nugatory, by reason of the conduct of a recus-ant, to observe the idle ceremony of tendering a paper or parchment, as to make any other description of tender. Looking at *200 the matter through the medium of any principle, it would seem to concern only the force of evidence, since a tender, in many cases, and the present appears to be one, would only demonstrate the more clearly that the defendant refused to perform his part, from which (at any rate in a case not affected by agreement under seal) a dispensation or discharge is matter of inference. Perhaps a mere refusal to comply before the time appointed, where one is fixed, should not imply so much, as one might revoke his resolution meantime; while under other circumstances it might imply a waiver, most strongly, and dispense with the duty of the adversary to attend at the time and place, as in the case cited from 9 Serg. & R. 212, Hampton vs. Speckenagle. We think a jury may properly inquire into the element suggested by Lord Mansfield, to wit: whether the conduct of a defendant had rendered the actual tender of conveyance a nugatory act.
It would, moreover, seem fit to inquire in this case whether Brunswick was not the place stipulated for the performance of all that was to be done, on either side; and if so, whether the failure of the defendant to attend there, in person or by representative, with the avowal of a definitive resolution to repudiate the contract, should not amount to a complete discharge of the plaintiffs from the vain act of holding up in view of nobody a deed of conveyance. If it should appear, as argued, that the defendant had an agent at the place and at the time,.it would be a fact for him to be weighed in the scale. That he should tender here in consideration that he sues here, is not a logical or legal deduction from a stipulation to tender there. It is clear enough, that where a party entitled to a tender of money, or other thing, is out of the realm, with no known agent left in his stead, he should suffer the consequences; and the doctrine was practically enforced in our own case of Fannen vs. Beauford, 1 Bay, 235.
We have striven to show, only, that the question of waiver or discharge, by the defendant, of what the plaintiffs should otherwise have done, is one that, from the facts of this case, cannot be resolved, as a conclusion of law, against the plain *201 tiffs; and as there appears to have been error in taking the same from the jury by non-suit ordered, the motion to set it aside is granted.
Wardlaw, Whitner, Glover and Munro, JJ., concurred.

Motion granted.